SILVIA SIMONET, Plaintiff and Appellee, *v.* OTILIO SANDOVAL, Defendant and Appellant.

No. 8522.   Argued June 25, 1942.—Decided July 8, 1942.

*E. Pérez Casalduc* for appellant.   *Antonio Lens Cuena* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the court.

Otilio Sandoval has appealed from the judgment of the district court granting his wife a divorce on the ground of desertion. The wife has filed no brief, and the *Fiscal* of this court has recommended that the judgment be reversed.

The plaintiff testified that she married the defendant in 1934 in New York, where she had been living with her family. A few weeks later the couple came to Puerto Rico, and the matrimonial domicile was established at Manatí in a house belonging to her husband. Her father, mother and sister came to Puerto Rico and lived with them. In 1935 a daughter was born to the couple. In April 1937 she came to Santurce, with the permission of her husband, to have her second child. Her family came with her. Since that time, she has not returned to Manatí, and she and her two children have been living with and supported by her brother. Her husband visited her in Santurce during the three or four months after the second baby was born, but objected to her

return to Manatí until he completed certain business deals. On his last visit, when she again insisted on returning to Manatí, he refused to permit this, telling her that he had rented his house in Manatí and had stored their furniture in a warehouse. She told him she wanted to return to her home, but that what he wanted could not be, as "he did not want to have children and he made illicit proposals" to her. Her husband became angry, left and told her she would never see him again.

On cross-examination the plaintiff at first denied obtaining any money belonging to her husband after coming to Santurce. She finally admitted cashing checks totalling $10,000, but asserted that she had turned this money over to her husband. She denied that she had marital relations with her husband on his visits to Santurce. She admitted she had filed suit for divorce against him in 1937, but stated that she dropped this suit as the result of a reconciliation.

Her sister was the plaintiff's only other witness. Her testimony was chiefly in corroboration of the plaintiff's account of her last conversation with her husband.

The defendant testified that he gave his wife permission to come to San Juan in 1937 for three days in order to see a doctor; that she and her family left Manatí in his automobile; that he gave her $65.00 to pay the expense of this trip; that she telephoned him to come to San Juan, at which time she told him she intended to remain in San Juan and had cashed checks of his amounting to $10,000, the proceeds of which he had never received from her; that he supported his wife and children, in spite of their separation, until 1940, when his wife refused to accept any more money from him, telling him she was interested in obtaining a divorce; that his wife continued to insist that she would not live in Manatí and that he must give up his business, move to San Juan and rent a house for her there; that when he told her this was impossible, she stated she would rather divorce him

than live in Manatí; that he had kept the furniture in his house in Manatí for a year and a half, but had finally rented the house and had returned the furniture to his wife's mother at her request.

■ The appellant urges us to reverse the judgment on the ground that there was a material variance between the complaint and the proof. The plaintiff alleged that the matrimonial domicile was in Santurce, where the defendant had abandoned her, whereas her own testimony was that the matrimonial domicile was in Manatí, which she left at her own instance. However, there was no objection to such testimony at the trial, and we therefore will not reverse on this ground (*Viñas* v. *Hernández*, 60 P.R.R. 269).

■■ Nevertheless, we regard this allegation of the complaint as a significant fact in itself on the question of desertion. When the plaintiff swore to her complaint, she apparently regarded her home, with her family in Santurce, as the matrimonial domicile. But, from her testimony at the trial, it develops that the true matrimonial domicile was in Manatí. And even accepting substantially all of her testimony as true, the wife has failed to make out a case of desertion. *Parés* v. *Echandi,* 55 P.R.R. 156; *Arce* v. *Lebis,* 50 P.R.R. 857.

The plaintiff came to Santurce at her own instance. She brought her family with her. After first denying it, she admitted cashing checks of her husband for $10,000. Even assuming that her husband insisted that she remain temporarily in San Juan while he completed certain business transactions, which he denies, in view of the fact that these business deals required his presence in the countryside, his request was amply justified. Her version of their alleged final conversation is not particularly impressive. She testified her husband told her he had rented their house in Manatí and stored the furniture. But a disinterested witness testified that he had rented the house from the husband

considerably later, and that when he first took the house the furniture was still in it.

Her vague statement that "he did not want children and made illicit proposals to her" is certainly not sufficient in itself to sustain a judgment of divorce on the ground of desertion. See *Axtmayer* v. *Ortiz*, 19 P.R.R. 476, 479. But *cf.* *Kreyling* v. *Kreyling*, 23 Atl. (2d) 800 (N.J.Ch. 1942); 55 Harv. L.R. 1044.

The true situation was brought out by the following questions put to the plaintiff by the district judge and her replies:

"Q.—And if he told you now that he wants you to return to Manatí and that he is willing to take you, would you be willing to return to Manatí? A.—This is a very embarrassing question, because you must understand that for three and a half years we have been separated and this matter comes up again and he brings it up again before the court, because this has gone on for three years and would go on forever. Q.—Do you mean to say that during those three years because of his behaviour you love him no longer? A.—Yes, sir. . . . Q.—Could you not for the sake of the children make a sacrifice and avoid the divorce? A.—No, sir."

In contrast, the same line of questioning of the defendant elicited replies that he still loved his wife, that he wanted her to desist from her divorce suit and to return to Manatí as his wife, especially for the sake of their children, and that she would do so if her parents were not insisting that she divorce him.

The "Opinion and Sentence" of the district court reads in part as follows:·

"From the evidence as a whole we have become convinced of the following conclusions:

"The defendant married a girl too young for his age, the difference in their ages being such that not only because of their ages but from their looks she could be, and pass for, his young daughter.

"They were married in New York, a city where the dynamic life is the cause which prevents people from meditating a great deal on the consequences of these unsuitable marriages.

"About three or four years ago the plaintiff moved to Santurce where she gave birth to her last child. It is inferred that then there were already differences between both spouses, for there had been litigation between them in the District Court of San Juan for divorce. She testified that afterwards she let things stand as they were, in the hope that the situation could be worked out, but she never returned to Manatí.

"It appears from the evidence as a whole that the marital relations remained then in such a form that the defendant used to give her money and visited her in Santurce and she continued to put off the final separation which became inevitable, because their mutual love, if it ever existed, had died, judging from their behavior.

"Ever since the latter part of the year 1939, defendant discontinued supporting her, thus giving to the separation a more marked aspect of legal desertion and this situation brought about the filing of the complaint in the present case.

"From whatever angle the situation may be viewed, even assuming that the defendant might still love his wife, whose youth made him proud of their marriage, we think that a judgment of divorce is preferable, because from the facts as shown, it appears that there do not exist between them the peaceful and happy relations that are so vital for marital life and for the setting of a good example to children."

It is apparent that, however kindly and praiseworthy his motives, the district judge was essaying the role of a Solomon rather than following the statute and the cases. It is not within the province of the courts to lay down the rule that young wives may divorce elderly husbands with impunity. Indeed, there is respectable authority that perhaps, even as a social policy, the lower court may have been in error. The French, who are not unwise in such matters, hold that a wife's age should be half her husband's plus seven. As the husband in this case at the time of the trial was 57 and the wife 35, this would seem to be a perfect marriage under that formula. Be that as it may, there was no clear and convincing proof that the husband abandoned the wife, and that was the only question into which the district court could legitimately inquire.

Likewise, we obtain no assistance from the vivid phrase of the trial judge that ''they were married in New York, a city where the dynamic life is the cause which prevents people from meditating a great deal on the consequences of these unsuitable marriages''. Presumably, the district court was taking judicial notice of this state of affairs in New York. But surely this can have no bearing on whether, after five years of residence together in Puerto Rico and the birth of two children, the defendant deserted the plaintiff in Puerto Rico. And however dynamic life may be in New York, divorce there is not treated lightly. Its statutes provide for only one ground for divorce—adultery (§1147, Civil Practice Act of New York). Apparently, the district judge was convinced the parties were incompatible, and felt that they, their family and society would be best served by granting a divorce. Until the Legislature provides that a divorce may be granted for incompatibility, no judgment based on such grounds can be sustained. See *Delgado* v. *Mercado, ante,* p. 571, decided June 18, 1942.

The judgment of the district court will be reversed.

Mr. Justice Travieso and Mr. Justice De Jesús did not participate herein.